IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIGINIA

Alexandria Division



```
JAIME ORTIZ,                    )
                Plaintiff,      )
V.                              )          Civil Action No. 1:10CV1424
                                )
PANERA BREAD COMPANY,           )
et al.,                         )
                                )
                Defendants.     )
_____)
```

## MEMORANDUM OPINION

This case is before the Court on Defendants Panera Bread Company and Panera, LLC's (hereinafter collectively as "Panera") Motion To Dismiss Or, In The Alternative, To Stay This Action.

On December 16, 2010, Plaintiffs Denarius Lewis, Carroll Ruiz, and Corey Weiner ("Lewis Plaintiffs") filed a Complaint in the United States District Court for the Middle District of Florida, Lewis, et al. v. Panera Bread Company, Case No. 2:10-cv00760-CEH-DNF, alleging that they, and other similarly situated, current and former Assistant Managers of Panera stores were misclassified and thus improperly denied premium compensation of time-and-a-half for overtime hours worked. Specifically, the Lewis Plaintiffs claim that between December 2007 and the present, Defendant has misclassified Plaintiffs and

the other employees who have worked as 'Assistant Managers' at Defendant's bakery-cafes across the United States as being 'exempt' from the protections of the Fair Labor Standards Act, paying Plaintiffs and the other similarly situated employees on a salaried basis without compensating them at time and one-half of their regular rate of pay for their overtime hours worked. Defendants failed to pay Plaintiffs and the other employees the overtime they were due while they were employed by Defendant in a non-exempt training position, and that Defendant has failed to maintain records of the start times, stop times, actual hours worked each day, and total hours worked each week by Plaintiffs and the other similarly situated employees for each work week between December 2006 and the present. As a result, the Lewis Plaintiffs claim that Panera violated the FLSA.

On March 11, 2011, the Lewis Plaintiffs and Panera entered into a Tolling Agreement which suspended the litigation in an effort to facilitate settlement discussions of the Lewis claims against Panera. These discussions are continuing and a formal mediation of the Lewis matter is expected to occur within the next few months.

On December 20, 2010, Jaime Ortiz filed his Complaint for Damages in this Court, alleging in Count I that he, and similarly situated, current and former Assistant Managers of

Panera stores were misclassified and thus improperly denied
premium compensation of time-and-a-half for overtime hours
worked. Ortiz claims that Plaintiff was misclassified by
Defendants as exempt from the overtime requirements of the and
that Plaintiff and other similarly situated Assistant Managers
were non-exempt employees, and eligible for overtime
compensation, under the FLSA. They routinely worked more than 40
hours in a week but were not paid overtime. Just like the <u>Lewis</u>
Plaintiffs, Ortiz claims that Panera violated the FLSA.

The proposed class and claims alleged in the Ortiz
Complaint are essentially identical to those in the earlier-
filed Lewis Complaint. Ortiz and Lewis both assert claims based
on the same legal theories against the same Defendant, on behalf
of the same group of employees and seek the same remedies.

In light of the nearly identical nature of the claims and
of the persons who are alleged to be "similarly situated" in
both <u>Ortiz</u> and <u>Lewis</u>, dismissal of the later-filed lawsuit is
warranted under the first-to-file rule. The first to file rule
states that in cases of federal concurrent jurisdiction, the
court which first has possession of the subject should decide
it. ("The general rule in federal courts is that the court in
which jurisdiction first attaches should be the one to decide
the case."); <u>Allied-General Nuclear Servs v. Commonwealth Edison</u>

Co., 675 F.2d 610, 611 n.1 (4th Cir. 1982) ("Ordinarily, when multiple suits are filed in different Federal courts upon the same factual issues, the first or prior action is permitted to proceed to the exclusion of another subsequently filed.") (citing Carbide & Carbon Chems. Corp. v. United States Indus. Chems, Inc., 140 F. 2d 47, 49 (4th Cir. 1944)).

The first to file rule gives priority for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction.  Ellicott Mach. Corp. v. Modern Welding Co., Inc., 502 F.2d 178, 180 n.2 (4th Cir. 1974).  The purpose underlying the first-to-file rule is the avoidance of duplicative litigation and the conservation of judicial resources and to ensure judicial efficiency, consistency, and comity.

The first-to-file rule is particularly appropriate in the context of competing FLSA collective actions, which threaten to present overlapping classes, multiple attempts at certification in two different courts, and complicated settlement negotiations.  It is not surprising that federal courts consistently apply the first-to-file rule to overlapping wage and hour collective actions. See, e.g., Fisher v. Rite Aid Corp. & Eckerd Corp., No. RDB-09-1909, 2010 U.S. Dist. LEXIS 56383 (D.

Md. June 8, 2010); <u>Meyers v. GC Servs.</u>, L.P., No. 3:09-1242, 2010 U.S. Dist. LEXIS 25764, *4 (S.D. W. Va. Mar. 18, 2010); <u>Walker v. Progressive Cas. Ins. Co.</u>, No. C03-656R, 2003 U.S. Dist. LEXIS 7871, at *10 (W.D. Wash. May 9, 2003); <u>White v. Peco Foods, Inc.</u>, 546 F. Supp. 2d 339 (S.D. Miss. 2008); <u>Steavens v. Elec. Data Sys. Corp.</u>, No. 07-14536, 2008 U.S. Dist. LEXIS (E.D. Mich. Nov. 25, 2008)(same); <u>Fuller v. Abercrombie & Fitch Stores, Inc.</u>, 370 F. Supp. 2d 686 (E.D. Tenn. 2005) (same); <u>Goldsby v. Ash</u>, 2010 U.S. Dist. LEXIS 40213 (M.D. Ala. Apr. 22, 2010) (same); <u>Nava v. Belfor USA Grp., Inc.</u>, 2008 U.S. Dist. LEXIS 45041 (E.D. Mich. June 10, 2008) (same).

The parties in these two cases are identical. Panera is the defendant employer in both actions. Both Ortiz and the <u>Lewis</u> Plaintiffs seek to represent the exact same class of current and former Assistant Manager employees who worked at Panera stores nationwide during the past three years. Jaime Ortiz is a member of the putative collective class alleged in <u>Lewis</u>. And the <u>Lewis</u> Plaintiffs are now members of the putative collective class alleged in <u>Ortiz</u>. In both lawsuits, Plaintiffs seek to recover from Panera.

The claims alleged by Ortiz in the present litigation are a mirror image of those alleged in the <u>Lewis</u> action. Both lawsuits allege that Panera misclassified Assistant Managers as exempt

from the overtime requirements of the FLSA, and failed to pay time and-a-half for overtime hours worked in violation of the FLSA. Both cases allege that this was done pursuant to a uniform, company-wide policy aimed at avoiding paying overtime compensation.  Both cases seek the same relief under the same substantive law while requesting certification of the same putative class

Defendant Panera also moves to dismiss Plaintiff's common law claims in Counts III and IV as Plaintiff has failed to state a claim for relief in either count.

"On a Rule 12(b)(6) motion, 'a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.'" Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008)); Fed. R. Civ. P. 12(b)(6).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court has explained, the purpose of the Rule is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  While Rule 8(a)(2) does not require detailed factual

allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed- me accusation." Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009). Hence, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Id. (quoting Twombly, 550 U.S. at 555). Nor will a complaint that tenders mere "naked assertion[s]" devoid of "further factual enhancement." Twombly, 550 U.S. at 557; Iqbal, 129 S.Ct. at 1949. Indeed, the Fourth Circuit has concluded that the Supreme Court's decision in Twombly establishes a review that is "more favorable to dismissal of a complaint" at the earliest stages of a case. Giarratano, 521 F.3d at 304 n.3.

Under the above standard, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not `show[ny]' — 'that the pleader is entitled to relief.'" Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). As a result, even a complaint that pleads facts that

are consistent with a defendant's liability is insufficient. Rather, the facts in the complaint must allow the court to reach a reasonable inference that the defendant is liable.

Specifically, under Rule 12(b)(6), a plaintiff's claim must be dismissed if he fails to allege "enough facts to state a claim to relief that is plausible on its face" such that he has "nudged [his] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

To state a claim for defamation under Virginia law, the Plaintiff must allege enough facts to raise beyond a speculative level: "(1) publication of (2) an actionable statement with (3) the requisite intent." Jordan v. Kollman, 612 S.E.2d 203, 206 (Va. 2005) (identifying the elements of libel); Fleming v. Moore, 275 S.E.2d 632, 635 (Va. 1981) (noting that "Virginia makes no distinction between actions for libel and those for slander"). Publication occurs when an actionable statement is transmitted "to some third person so as to be heard and understood by such person." Thalhimer Bros., Inc. v. Shaw, 159 S.E. 87, 90 (Va. 1931). Certain types of false statements are actionable per se: (1) those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished; (2) those which impute that a person is infected with

some contagious disease, where if the charge is true, it would exclude the party from society; (3) those which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment; and (4) those which prejudice such person in his or her profession or trade. Fleming v. Moore, 275 S.E.2d at 635. Private plaintiffs alleging defamation per se must prove that the defendant acted negligently by a preponderance of the evidence. Food Lion, Inc. v. Melton, 458 S.E.2d 580, 584 (Va. 1995).

Here, Plaintiff's claim for defamation per se fails to state a claim as he does not allege the first element of publication to a third party. "The failure to allege and prove that there was publication of defamatory statements by the Defendant to a third party is fatal to an action for common law libel in Virginia." Cybermotion, Inc. v. Vedcorp, L.C., 41 Va. Cir. 348, 349 (Va. Cir. Ct. 1997).

Plaintiff's defamation per se claim is subject to a qualified privilege. The Virginia Supreme Court has advised that, in the context of an employment relationship, an allegedly defamatory statement is afforded a qualified privilege when the statement is made between persons on a subject in which they have an interest or duty. Union of Needletrades, Indus. & Textile Emp. v. Jones, 603 S.E.2d 920, 924 (Va. 2004). See also

Larimore v. Blaylock, 528 S.E.2d 119, 121 (Va. 2000). ("We have
applied the doctrine of qualified privilege in a number of cases
involving defamatory statements made between co-employees and
employers in the course of employee disciplinary or discharge
matters."). Courts have applied this privilege to communications
by employers to employees explaining a co-worker's termination
and to communications by employers discussing former employees
with their prospective employers. See Wynn v. Wachovia Bank, No.
3:09CV136, 2009 U.S. Dist. LEXIS 38250, at *9-10 (E.D. Va. May
6, 2009); Hargrave v. Tignor, 24 Va. Cir. 353, 358 (Va. Cir. Ct.
1991) ("It is an established general rule that a communication
respecting the character of an employee or former employee is
qualifiedly privileged if made in good faith by a person having
a duty in the premises to one who has a definite interest
therein . . . So long as good faith is present, the person
making the statement is not limited to facts that are within his
personal knowledge but may, and should, pass on to his inquirer
all relevant information that has come to him, regardless of
whether he believes it to be true or not").

   A showing of malice is necessary to overcome the privilege.
Larimore, 528 S.E.2d at 121. "Common law malice exists where:
(1) the defendant knew the statement was false or made it with
reckless disregard of whether it was false or not; or (2) the
statement was deliberately made in such a way that it was heard

by persons having no interest or duty in the subject of the statement; or (3) the statement was unnecessarily insulting; or (4) the language used was stronger or more violent than was necessary under the circumstances; or (5) the statement was made because of hatred, ill will or a desire to hurt the plaintiff rather than as a fair comment on the subject." Hargrave, 24 Va. Cir. at 359. The plaintiff "must affirmatively prove the existence of actual malice, and to do so, [the facts] must be more consistent with the existence of actual malice than with its nonexistence, and at least raise a probability of its existence . . . if the language of the communication and the circumstance attending its publication are as consistent with the non-existence of malice as with its existence, there is no issue for the jury ." Id. at 360-61. "Repeated assertions that a party acted with malice or with a motive of personal spite is not sufficient; rather, such conclusory language does not state a claim for malice if the facts as alleged cannot support a finding as such." Wynn v. Wachovia Bank, No. 3:09CV136, 2009 U.S. Dist. LEXIS 38250, at *10-11 (E.D. Va. May 6, 2009).

In this case, Plaintiff alleges that Panera communicated the reasons for his termination with the General Manager of the store where he was employed at the time of his discharge. Clearly, Plaintiff's direct supervisor needed to be informed of Plaintiff's termination and the reasons behind it. Plaintiff

does not allege that Panera communicated with any other
employees about his termination. Any discussions concerning
Ortiz's termination were between members of management who were
fulfilling their job responsibilities and acting on common,
corresponding duties or interests when they discussed
Plaintiff's termination. Therefore, Plaintiff s defamation claim
fails and should be dismissed. No malice on the part of Panera
has been established, as Plaintiff has pled only conclusory
statements regarding Panera's motive and malicious intent.  See
Larimore, 528 S.E.2d at 122 ("employment matters are occasions
of privilege in which the absence of malice is presumed").
Therefore, Plaintiff's defamation claim lacks the essential
publication element, and should be dismissed.

    Plaintiff also claims that he was "required to republish
the false accusations to others because of the need to look for
new employment and explain to family what happened." However,
Virginia law does not recognize self-publication as a means of
establishing the publication element of a claim for defamation.

    This Court recently addressed this very issue in Wynn v.
Wachovia Bank, No. 3:09CV136, 2009 U.S. Dist. LEXIS 38250, at
*7-8 (E.D. Va. May 6, 2009). The Court stated, "Virginia has not
recognized a relatively new theory of self-publication--a theory
Plaintiff relies on in her defamation claim." The Court cited to
a case from the Circuit Court of the City of Salem, Cybermotion,

Inc. v. Vedcorp, L.C., 41 Va. Cir. 348, 348 (Va. Cir. Ct. 1997), which considered the issue of "whether the theory of compelled self publication by the Plaintiff can be a substitute for the requirement that the Defendant must publish the defamatory words to a third person. The answer is that it cannot." Therefore, Plaintiff's claim that he has been forced to defame himself is insufficient to support the publication requirement of a defamation claim.  Accordingly, the Court should dismiss Count III of Plaintiff's Complaint, as Plaintiff has failed to establish the publication element of his defamation claim.

    In order to state a claim for intentional infliction of emotional distress, a Virginia litigant must plead factual allegations tending to show that: (1) the wrongdoer's conduct was intentional or reckless; (2) that his conduct was outrageous and intolerable, offending the generally accepted standards of decency and morality; (3) that there is a causal connection between the conduct and the emotional distress; and (4) that the resulting emotional distress was severe. Womack v. Eldridge, 210 S.E.2d 145, 148 (Va. 1974) (recognizing intentional infliction of emotional distress as a cause of action for the first time under Virginia law). Plaintiff has failed to allege that Panera engaged in conduct so outrageous and intolerable that it offended generally accepted standards of decency and morality. Moreover, Plaintiff has not alleged any facts from which the

Court could conclude or infer that he experienced severe emotional distress. These omissions are fatal to his claim.

Claims for intentional infliction of emotional distress are disfavored under Virginia law. Russo v. White, 400 S.E.2d 160, 162 (Va. 1991). The burden of proof for this claim is high and not often met, as the plaintiff must prove his or her case by clear and convincing evidence. Ruth v. Fletcher, 377 S.E.2d 412, 416 (Va. 1989).

When evaluating a claim for intentional infliction of emotional distress, "[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery . . . ." Womack, 210 S.E.2d, at 148. Plaintiff's claim fails to meet this standard.

Because the tort provides no clear definition of the prohibited conduct, it is difficult to state a viable claim for intentional infliction of emotional distress. Russo, 400 S.E.2d at 162. The second element of the claim cannot be satisfied by alleging that the defendant's behavior was tortious, or even criminal. Moreover, malice or intentional behavior which would justify punitive damages for other torts will not suffice. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community."
Id. (quoting the Restatement (Second) of Torts, § 46, comment d,
with approval). See Doe v. Bruton Parrish Church, 42 Va. Cir.
467, 471 (Vir. Cir. Ct. 1997).

This high standard is exceptionally difficult to prove in
the employment context where multiple courts have rejected its
assertion. See Long v. First Union Corp. of Va., 894 F. Supp.
933, 945 (E.D. Va. 1995) (defendant bank did not commit
outrageous conduct as a matter of law when it instituted a
policy that employees were to speak only English while at work).
Karpel v. Inova Health Sys. Servs., Inc., No. 96-347-A, 1997 WL
38137, *7 (E.D. Va. Jan. 27, 1997) (well-settled that
discrimination or retaliation, even if proven, do not rise to
the level of outrageousness required to state a claim for
intentional infliction of emotional distress) (citing Beardsley
v. Isom, 828 F. Supp. 397 (E.D. Va. 1993)); Brooks v. Kilborn
Mgmt. Grp., Inc., No. LM-827-4, 1990 WL 751079, *3 (Va. Cir. Ct.
March 1, 1990) (court determined that allegations that the
defendant had a severe drinking problem, frequently went to work
drunk, intentionally harassed plaintiff employee on numerous
occasions, and was argumentative and hostile were not enough to
state a claim for intentional infliction of emotional distress).

Plaintiff's intentional infliction of emotional distress
claim also fails because he has insufficiently alleged the

severity of any alleged mental or emotional distress. Under the
fourth element, emotional distress would be considered "severe"
"only when the emotional distress is extreme, and only where the
distress inflicted is so severe that no reasonable person could
be expected to endure it." Russo v. White, 400 S. E. 2d 160, 163
(Va. 1991). In Russo, the plaintiff attempted to support her
claim for intentional infliction of emotional distress by
alleging that "she was nervous, could not sleep, experienced
stress and its physical symptoms, withdrew from activities, and
was unable to concentrate at work." Id.  The Virginia Supreme
Court affirmed the ruling of the trial court which had sustained
the defendant's demurrer.  In particular, the Court noted that
Plaintiff's allegations were deficient because she had no
objective physical injury caused by the emotional distress,
sought no medical attention for it, was not confined in a
hospital or at home, and had loss no income. Id.; see also
Molina v. Summer Consultants, Inc., No. 152715, 1996 WL 1065653,
*3 (Va. Cir. Ct. Dec. 9, 1996) (holding that plaintiff's
allegations that she suffered shock, panic attacks, lost sleep,
lost income, humiliation, stress, pain, suffering, medical
expense, physical impact, and other injury as a result of her
employer's continued sexual harassment were not sufficient to
sustain a claim for "severe" emotional distress); Michael v.
Sentara Health Sys., 939 F. Supp. 1220, 1234 (E.D. Va. 1996)

(dismissing claim for intentional infliction of emotional distress where plaintiff did not allege that she sought medical treatment, ceased functioning normally, or that the stress caused her any objectively verifiable physical or emotional injury).

In this case, Plaintiff alleges that Panera's actions caused him to "experience emotional pain and suffering, loss of enjoyment, and other damages." He further claims that he "suffered severe mental and emotional distress." These bare and conclusory assertions do not suffice under the above standards.

Plaintiff's claim for intentional infliction of mental and emotional distress is based upon statements allegedly made by his supervisors during the termination of his employment from Panera. As these alleged statements arose out of Plaintiff's employment with Panera and occurred during the course of Plaintiff's employment with Panera, Plaintiff's exclusive remedy against Panera for such alleged injuries would be recovery under the Virginia Workers' Compensation Act. See Va. Code Ann. § 65.2-307.

For these reasons Defendant Panera's Motion To Dismiss Plaintiff's Complaint should be granted for these Plaintiff's to join in the Lewis case in the Middle District of Florida and to pursue any common law claims at that time.

An appropriate Order shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
August    , 2011